**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

MICHAEL S. HARTLEY,

                                        Plaintiff,

            v.                                                      No. 14-CV-1366
                                                                    (GLS/CFH)
RICHARD DEVLIN, Otsego County
Sheriff, et al.,

                                        Defendants.

_____

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**


**APPEARANCES:**                                    **OF COUNSEL:**

Michael S. Hartley
13-B-3811
Marcy Correctional Facility
P.O. Box 3600
Marcy, New York 13403

Lemire, Johnson Law Firm                   GREGG T. JOHNSON, ESQ.
P.O. Box 2485                              BRADLEY J. STEVENS, ESQ.
2534 Route 9
Malta, New York 12020
Attorneys for Defendant Richard Devlin

Hon. Eric T. Schneiderman                  RYAN W. HICKEY, ESQ.
Attorney General for the                   Assistant Attorney General
    State of New York
The Capitol
Albany, New York 12224-0341
Attorney for Defendants Colleen Coppola[1],
Krishna Vadlamudi, Shehab Zaki, Charles

---

[1] "Connie Coppola" is signed "Colleen Coppola" in her Acknowledgment of Service, as well as the motion to dismiss submitted by her counsel. Dkt. Nos. 8, 22. The Court proceeds with the latter name and will direct the Clerk's office to make the necessary changes to the docket to reflect defendant Coppola's actual name.

Kelly, Jr., and Carl Koenigsmann

Plaintiff <u>pro</u> <u>se</u> Michael S. Hartley ("Hartley"), who at the relevant time in question was in custody at the Otsego County Jail ("OCJ"), and later at Marcy Correctional Facility ("Marcy C.F."), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants, Sheriff Richard Devlin, Colleen Coppola, Krishna Vadlamudi, Shehab Zaki, Charles Kelly, Jr., and Carl Koenigsmann, violated his constitutional rights under the Eighth and First Amendments. Dkt. No. 1. Presently pending is a motion to dismiss pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6) submitted by defendants Coppola, Vadlamudi, Zaki, Kelly, and Koenigsmann, and a motion to dismiss pursuant to Fed. R. Civ. P. 12(b) and 12(c) submitted by defendant Devlin. Dkt. Nos. 20, 22. Hartley submitted a response in opposition to each motion. Dkt. Nos. 23, 28. Defendant Devlin submitted a reply. Dkt. No. 27. For the following reasons, it is recommended that defendants Coppola, Vadlamudi, Zaki, Koenigsmann, and Kelly's motion be granted in part and denied in part, and that defendant Devlin's motion be denied.

## I. Background

The facts are reviewed in the light most favorable to Hartley as the non-moving party. <u>See</u> subsection II(A) <u>infra</u>. Plaintiff's allegations took place over a period of approximately one year.

---

[2] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636 (b) and N.D.N.Y.L.R. 72.3 (c).

## A. Otsego County Jail

On September 3, 2013, Hartley presented to the Nurse Administrator of OCJ complaining of pain in his stomach and an inability to eat. Compl. ("Dkt. No. 1") at 3. Medical staff at OCJ referred Hartley to Bassett Hospital in Cooperstown, New York that same day for further examination. Id. Upon further testing at Basset Hospital, Hartley was diagnosed with an enlarged and perforated appendix. Id. at 4. Non-party Dr. Keonna Johnson recommended that Hartley's appendix be removed "as soon as possible." Id.

Hartley was discharged from Bassett Hospital on September 9, 2013, and told to return "in a matter of days" for further examination to determine if inflammation had subsided enough to proceed with the removal of his appendix. Compl. at 4. At a subsequent follow-up appointment, it was determined that the removal of Hartley's appendix should be performed "not beyond the date of October, 2013" to prevent rupture of the appendix. Id. Non-party Nurse Administrator Lynn scheduled Hartley's next appointment, but defendant Devlin "disapproved the request for a transfer order." Id. Hartley experienced "excruciating" pain during his remaining time at OCJ, which lasted until December 28, 2013. Id.

During his time at OCJ, Hartley was denied pain medication for his condition. Compl. at 5. Hartley sent grievances to Alfred E. Smith[3] and "the court" requesting intervention. Id.

## B. Marcy Correctional Facility

On December 28, 2013, Hartley was transferred to Elmira Correctional Facility, and

---

[3] Hartley's sole claim against Smith was that he failed to adequately address Hartley's grievance. This claim was dismissed by District Judge Sharpe's Decision and Order, entered February 4, 2015. Dkt. No. 4 at 8.

informed that he would be scheduled for surgery once he arrived at Marcy C.F.  Compl. at 5.
Hartley was transferred to Marcy C.F. on February 6, 2014.  Id.

During his initial medical screening at Marcy C.F., Hartley told a nurse that he "was in a great deal of pain" due to his perforated appendix.  Compl. at 5.  Hartley gave the nurse a copy of his medical records and informed her that staff at his previous facility had planned to remove his appendix "at the earliest date possible."  Id.

The day after his arrival at Marcy C.F., Hartley was examined by defendant Vadlamudi.  Compl. at 6.  During the examination, Vadlamudi applied pressure to Hartley's stomach, to which Hartley responded that he felt "extreme pain."  Id.  Vadlamudi told Hartley that he would receive an appendectomy, but not on that day.  Id.  Hartley requested medication for his pain, and Vadlamudi asked to perform a rectal exam to observe whether Hartley's appendix was swollen.  Id.  Hartley declined.  Id.  After Vadlamudi's examination, Hartley contacted defendant Coppola, Nurse Administrator at Marcy C.F., and requested that he be examined by a doctor outside Marcy C.F. for a second opinion.  Id.  Coppola failed to respond to Hartley's letter.  Id.  Hartley then filed a grievance on February 20, 2014, regarding the "lack of medical attention" and medical staff's refusal to provide him pain medication.  Id. at 6-7.  He received a response to his grievance in March 2014.  Id. at 7.

In April 2014, defendant Coppola summoned Hartley to the medical unit, confronted him about his filing grievances, and discontinued his seizure medication.  Compl. at 7.
Hartley filed a grievance regarding this incident, alleging that Coppola retaliated against him for his previous grievance filed against both Coppola and Vadlamudi.  Id.  The Grievance Committee found in favor of Hartley.  Id.

Beginning in February 2014 and lasting until the filing date of Hartley's complaint,

-4-

Hartley utilized the sick call procedure at Marcy C.F. one to two times per week in an effort to expedite his appendix surgery. Compl. at 7. He wrote letters to non-party Karen Bellamy, New York State Department of Corrections and Community Supervision ("D.O.C.C.S.") Inmate Grievance Program Director, and defendant Carl Koenigsmann, D.O.C.C.S. Medical Director. Id. at 8. Both advised Hartley to utilize the sick call procedure at Marcy C.F. Id.

Hartley alleges that he has been threatened with misbehavior reports when he has requested emergency sick calls. Compl. at 8. He further alleges that defendant Charles Kelly, Jr., former Superintendent of Marcy C.F., was fully aware of Hartley's medical condition and his need for an appendectomy, and failed to ensure that the Marcy C.F. medical staff followed "the accepted standard of medical care." Id. at 8-9. Hartley also claims similar allegations against defendants Coppola, Zaki, and Vadlamudi, stating that these defendants were all aware of the seriousness of his condition and need for surgery, yet failed to provide him with medical care. Id. at 9-10. Hartley requests monetary damages and injunctive relief. Id. at 10.

## II.  Discussion[4]

Hartley contends that: (1) defendants Devlin, Coppola, Vadlamudi, Zaki, Kelly, and Keonigsmann were deliberately indifferent to his serious medical need by failing to provide him with pain medication and/or failing to schedule and facilitate an appendectomy; and (2) defendant Coppola withheld Hartley's seizure medication in retaliation for Hartley's filing a

---

[4]  All unpublished opinions cited to by the Court in this Report-Recommendation and Order are, unless otherwise noted, attached to this Report-Recommendation and Order.

grievance against her.[5]  <u>See</u> <u>generally</u> Compl.  Defendants argue that: (1) defendants Koenigsmann, Kelly, Zaki, and Devlin were not personally involved in the alleged constitutional violations; (2) Hartley's deliberate indifference claims against all defendants fail as a matter of law; (3) Hartley's First Amendment retaliation claim against defendant Coppola fails as a matter of law; and (4) defendant Devlin is entitled to qualified immunity. <u>See</u> <u>generally</u> Dkt. Nos. 20-1, 22-1.

## A.  Legal Standard

Under Fed. R. Civ. P. 12 (b)(6), a defendant may move to dismiss a complaint for a plaintiff's "failure to state a claim upon which relief can be granted."  When considering such a motion, a court must "construe plaintiff['s] complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in plaintiff['s] favor."  <u>Selevan v. N.Y. Thruway Auth.</u>, 584 F.3d 82, 88 (2d Cir. 2009) (quoting <u>Holmes v. Grubman</u>, 568 F.3d 326, 335 (2d Cir. 2009)) (internal quotation marks omitted).  However, this "tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  <u>Harris v. Mills</u>, 572 F.3d 66, 72 (2d Cir. 2009) (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 664 (2009)) (internal quotation marks and alterations omitted).

Accordingly, to survive a motion to dismiss, a complaint must state a claim for relief that is "'plausible on its face.'"  <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Bell Atlantic Corp. v.</u>

---

[5]  By Decision and Order, entered February 4, 2015, District Judge Sharpe dismissed (1) all claims for monetary damages against the defendants in their official capacities and (2) a claim that defendant Smith improperly addressed Hartley's grievances.  Dkt. No. 4 at 8.

<u>Twombly</u>, 550 U.S. 544, 570 (2007) (explaining that the plausibility test "does not impose a probability requirement . . . it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]."))); <u>see</u> <u>also</u> <u>Arar v. Ashcroft</u>, 585 F.3d 559, 569 (2d Cir. 2009) (holding that "[o]n a motion to dismiss, courts require enough facts to state a claim to relief that is plausible . . . .") (internal citations omitted).  Determining whether plausibility exists is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  <u>Iqbal</u>, 556 U.S. at 679.

Where, as here, a party seeks judgment against a <u>pro se</u> litigant, a court must afford the non-movant special solicitude.  <u>See</u> <u>Triestman v. Fed. Bureau of Prisons</u>, 470 F.3d 471, 477 (2d Cir. 2006).  As the Second Circuit stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to special solicitude, that a pro se litigant's submissions must be construed liberally, and that such submissions must be read to raise the strongest arguments that they suggest. At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not consistent with the pro se litigant's allegations or arguments that the submissions themselves do not suggest that we should not excuse frivolous or vexatious filings by pro se litigants, and that pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law . . . .

<u>Id.</u> (internal quotation marks, citations, and footnote omitted); <u>see</u> <u>also</u> <u>Sealed Plaintiff v. Sealed Defendant #1</u>, 537 F.3d 185, 191–92 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds *pro se*, . . . a court is obliged to construe his pleadings liberally." (internal citations omitted)).

## B.  Personal Involvement

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a

prerequisite to an award of damages under § 1983." Wright v. Smith, 21 F.3d 496, 501 (2d

Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991) (additional

citations omitted)).  Thus, supervisory officials may not be held liable merely because they

held a position of authority.  Id.; Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996).  However,

supervisory personnel may be considered "personally involved" if:

> (1) the defendant participated directly in the alleged constitutional
> violation;
>
> (2) the defendant, after being informed of the violation through
> report or appeal, failed to remedy the wrong;
>
> (3) the defendant created a policy or custom under which
> unconstitutional practices occurred, or allowed the continuance
> of such a policy or custom;
>
> (4) the defendant was grossly negligent in supervising
> subordinates who committed the wrongful acts; or
>
> (5) the defendant exhibited deliberate indifference to the rights of
> inmates by failing to act on information indicating that
> unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Wright v. Smith, 21 F.3d 496, 501

(2d Cir. 1994) (additional citation omitted)).[6]  Assertions of personal involvement that are

merely speculative are insufficient to establish a triable issue of fact.  See e.g., Brown v.

Artus, 647 F. Supp. 2d 190, 200 (N.D.N.Y. 2009).

---

[6] Various courts in the Second Circuit have postulated how, if at all, the Iqbal decision has affected the five Colon factors which were traditionally used to determine personal involvement.  Pearce v. Estate of Longo, 766 F. Supp. 2d 367, 376 (N.D.N.Y. 2011), rev'd in part on other grounds sub nom., Pearce v. Labella, 473 F. App'x 16 (2d Cir. 2012) (recognizing that several district courts in the Second Circuit have debated Iqbal's impact on the five Colon factors); Kleehammer v. Monroe Cnty., 743 F. Supp. 2d 175, 185 (W.D.N.Y. 2010) (holding that "[o]nly the first and part of the third Colon categories pass Iqbal's muster . . . ."); D'Olimpio v. Crisafi, 718 F. Supp. 2d 340, 347 (S.D.N.Y. 2010) (disagreeing that Iqbal eliminated Colon's personal involvement standard).

## 1. Koenigsmann

Here, Hartley alleges that he wrote a letter to defendant Koenigsmann regarding his medical condition and lack of treatment from the medical staff at Marcy C.F., and that Koenigsmann responded to Hartley's correspondence. Compl. at 8, 32. Hartley attached to his complaint a letter from non-party Megan Yaiser, D.O.C.C.S. Regional Health Services Administrator, which states that defendant Koenigsmann asked Yaiser to respond to Hartley's letter. Id. at 31. Hartley contends in his opposition papers[7] that he contacted Koenigsmann a second time regarding defendant Copolla's alleged retaliation.[8] Dkt. No. 28 at 6. Defendants argue that Hartley has failed to show that Koenigsmann was personally involved in the alleged constitutional violations. Dkt. No. 22-1 at 8. In construing Hartley's allegations liberally, he is alleging that Koenigsmann, after being informed of alleged constitutional violations, failed to remedy the wrong, which falls under the second Colon factor. See Compl. at 8; Colon, 58 F.3d at 873.

"The general rule is that if an official receives a letter from an inmate and passes it on to a subordinate for response or investigation, the official will not be deemed personally

---

[7] Although, generally, the Court may not look outside the pleadings when deciding a motion to dismiss pursuant to 12(b)(6):

> the [Second Circuit's] mandate to read the papers of pro se litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint.

Cusamano v. Sobek, 604 F. Supp. 2d 416, 461 (N.D.N.Y. 2009).

[8] The Court notes that, while Hartley's opposition papers appear to argue that he sent two letters to Koenigsmann, on two separate occasions, the exhibits submitted with both Hartley's complaint and opposition papers contain copies of only one letter addressed to Koenigsmann, and one response letter from Megan Yaiser. See Compl. at 31-32; Dkt. No. 70-71.

involved with respect to the subject matter of the letter." <u>Rivera v. Fischer</u>, 655 F. Supp. 2d 235, 238 (W.D.N.Y. 2009) (citing <u>Sealey v. Giltner</u>, 116 F.3d 47, 51 (2d Cir. 1997)). If a supervisory official investigates and responds to a complaint letter him or herself, the official may be deemed personally involved for purposes of an inmate's § 1983 action. <u>Lloyd v. City of New York</u>, 43 F. Supp. 3d 254, 267 (S.D.N.Y. 2014) (finding no personal involvement where the defendant informed the plaintiff that his letter of complaint had been forwarded to appropriate staff for investigation). The letters submitted by Hartley as exhibits to both his complaint and opposition papers clearly show that Koenigsmann referred Hartley's letter to Yaiser, who investigated and responded to Hartley's complaints. <u>See</u> Compl. at 31-32; Dkt. No. 28-1 at 70-71; <u>DeMeo v. Koenigsmann</u>, No. 11 Civ. 7099(HBP), 2015 WL 1283660, at *15 (S.D.N.Y. Mar. 20, 2015) (finding no personal involvement where the defendant referred a complaint letter to subordinate and the subordinate responded to the plaintiff's complaints).

To the extent that Hartley claims that he sent an additional letter to Koenigsmann, such allegation also fails to show the requisite personal involvement. The Second Circuit has held that, at the initial pleading stage, an inmate's complaint may survive a motion to dismiss based on a defendant's lack of personal involvement if the inmate's complaint "contain[s] factual allegations indicating that the [l]etter was sent to the [official] at an appropriate address and by appropriate means—that the [official] in fact received the [l]etter, read it, and thereby became aware of the alleged conditions by which [the inmate] complained." <u>Grullon v. City of New Haven</u>, 720 F.3d 133, 140 (2d Cir. 2013). Hartley's conclusory statement that he sent an additional letter to Koenigsmann, unsupported by any details of when he sent the letter, where he sent the letter, what the letter contained, or

whether Koenigsmann actually received the letter, is insufficient to survive defendants'

motion to dismiss.  <u>See</u> <u>id.</u>

Accordingly, it is recommended that defendants' motion on this ground be granted.

## 2. Kelly

Hartley contends that Kelly "was made fully aware of [his] medical condition, [and]

need for surgery . . . yet failed to intervene . . . to ensure that the medical staff, under his

administrative supervision, provided [him] with the accepted standard of medical care . . . ."

Compl. at 8-9.  Specifically, Hartley alleges that Kelly "overlooked" a grievance that Hartley

sent to him.  <u>Id.</u> at 16.  Hartley attached as an exhibit to his complaint a letter allegedly sent

to Kelly on May 14, 2014, which states that Hartley is awaiting Kelly's decision on an

appealed grievance decision.  <u>Id.</u> at 30.  He also attached a letter, dated May 20, 2014 and

addressed to the D.O.C.C.S. Central Office Review Committee ("C.O.R.C."), stating that he

had received a decision from the Superintendent and was appealing that decision.  <u>Id.</u> at 38.

In construing Hartley's complaint liberally, his allegations against Kelly fall under both the

second and fourth <u>Colon</u> factors.  <u>Colon</u>, 58 F.3d at 873.

As to the second <u>Colon</u> factor, defendants argue that Hartley's bare allegation that he

sent a letter to Kelly is insufficient to establish Kelly's personal involvement.  Dkt. No. 22-1 at

8-9.  Defendants are correct in that assertion.  The fact that a superintendent affirms the

denial of a plaintiff's grievance, without more, is insufficient to establish personal

involvement for the purposes of a deliberate indifference claim.  <u>White v. Sears</u>, No. 9:10-

CV-0721 (MAD/GHL), 2011 WL 2728443, at *8 (N.D.N.Y. June 20, 2011); Joyner <u>v. Greiner</u>,

195 F. Supp. 2d 500, 506 (S.D.N.Y. 2002).  While some courts have held that a

superintendent's repeated denials of an inmate's grievances may show personal involvement, such cases are readily distinguishable from Hartley's allegations. <u>See</u>, <u>e.g.</u>, <u>Saxon v. Attica Med. Dept.</u>, 468 F. Supp. 2d 480, 483 (W.D.N.Y. 2007) (denying motion to dismiss based on lack of personal involvement where the plaintiff filed "several" grievances over two years and received multiple responses from the superintendent). Further, to hold that Kelly was personally involved because he reviewed and affirmed one grievance would lead to the "untenable" consequence that the superintendent of a correctional facility would be named as a defendant in virtually all inmate complaints, since inmates must appeal to the superintendent to satisfy the requirements of the Prison Litigation Reform Act. <u>See Madison v. Mazzuca</u>, No. 02-CV-10299 (RWS), 2004 WL 3037730, at *10 (S.D.N.Y. Dec. 30, 2004) (granting motion to dismiss as to prison officials where the plaintiff filed and subsequently appealed grievances).

Here, Hartley alleges that Kelly was "fully aware" of Hartley's need for surgery based on a recommendation by a specialist, and therefore should have intervened to ensure that Hartley received the proper care. Compl. at 8-9. However, prison officials are entitled to rely on the opinions of medical professionals in determining an inmate's proper course of treatment. <u>Joyner</u>, 195 F. Supp. 2d at 506 (citing <u>Abdush-Shahid v. Coughlin</u>, 933 F. Supp. 168, 183 (N.D.N.Y. 1996)). Kelly clearly relied on the opinion of medical professionals, as his response to Hartley's appeal states that he "reviewed [the] grievance and the response submitted by Facility Health Services." Compl. at 35. Therefore, Kelly cannot be deemed personally involved under the second <u>Colon</u> factor for the purposes of Hartley's deliberate indifference claim.

To the extent that Hartley's complaint may be interpreted under the fourth <u>Colon</u>

factor, Hartley has failed to state a claim that Kelly "was grossly negligent in supervising subordinates who committed the wrongful acts[.]" Colon, 58 F.3d at 873. "A position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement." Felix-Torres v. Graham, 687 F. Supp. 2d 38, 61 (N.D.N.Y. 2009). Hartley's statement that Kelly failed to supervise the medical staff is devoid of any allegations that connect Kelly's alleged negligent supervision with Hartley's alleged injury. See Rivera v. Goord, 119 F. Supp. 2d 327, 344-45 (S.D.N.Y. 2000) (dismissing claim where the plaintiff failed to allege any facts showing that the prison officials were grossly negligent in supervising any of the other defendants).

Accordingly, it is recommended that defendants' motion on this ground be granted.

### 3. Zaki

Hartley claims that Zaki was deliberately indifferent to his serious medical need by failing to intervene to assure that Hartley received an appendectomy, despite being aware of his medical condition and the need for surgery. Compl. at 9. In his opposition papers, Hartley claims that he saw Zaki on three separate occasions. Dkt. No. 28 at 9. Defendants argue that Zaki was not personally involved in the alleged constitutional violations. Dkt. No. 22-1 at 9-10.

Although Hartley's allegations that Zaki examined him on three separate occasions are absent from his complaint, the Court, in deference to Hartley's pro se status, will consider these allegations as effectively amending Hartley's complaint. Cusamano, 604 F. Supp. 2d at 461 (incorporating the plaintiff's allegations in opposition papers as amendments to the original complaint). Because Hartley alleged that Zaki "participated in

-13-

the denial of treatment[,]" dismissal of the complaint against him at this stage would be inappropriate.  McKenna v. Wright, 386 F.3d 432, 437 (2d Cir. 2004) (affirming the denial of a motion to dismiss against medical defendants where defendants were alleged to have participated in the plaintiff's treatment).  Although Hartley's allegations against Zaki are quite vague, he should be allowed to explore Zaki's alleged involvement during discovery.  In so finding, the Court makes no decision as to whether the allegations against Zaki would survive a motion for summary judgment.

Accordingly, it is recommended that defendants' motion on this ground be denied.


### 4.  Devlin

Hartley alleges that Devlin "disapproved the request for a transfer order (medical) so that [Hartley's] surgery could be completed[.]"  Compl. at 4.  In his opposition papers, Hartley claims that the surgeon at Bassett Hospital "gave specific expressed [sic] orders in writing to Sheriff Devlin, that he wanted [Hartley] back within a few weeks to do surgery[.]"  Dkt. No. 23 at 3.  Hartley further contends that he kept requesting to return to the hospital for surgery and was told that Devlin denied his medical transfer order.  Id.  Devlin argues that Hartley's complaint is insufficient to establish his personal involvement.  Dkt. No. 20-1 at 12-15.

Contrary to Devlin's arguments, Hartley has alleged sufficient facts to show that Devlin's involvement was more than just placement in a hierarchical chain of command.  See Dkt. No. 27-2 at 8-9.  Here, Hartley alleges that Devlin was given a note from a medical professional stating that Hartley must return to the hospital for treatment for a perforated appendix.  Dkt. No. 23 at 3.  Devlin then allegedly denied the medical transfer order needed

-14-

for Hartley to obtain treatment for his condition. Id. Hartley's allegations are sufficient to allege that Devlin participated directly in the alleged constitutional violation. See Inesti v. Hicks, No. 11-CV-2596 (PAC)(AJP), 2012 WL 2362626, at *17 (S.D.N.Y. June 22, 2012) (denying a motion for dismissal where jail officials "denied mental health treatment").

Accordingly, it is recommended that Devlin's motion on this ground be denied.

## C. Eighth Amendment

The Eighth Amendment[9] explicitly prohibits the infliction of "cruel and unusual punishment." U.S. CONST. amend. VIII. "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 828 (1994) (quoting Helling v. McKinney, 509 U.S. 25 (1993)); Wilson v. Seiter, 501 U.S. 294 (1991); Estelle v. Gamble, 429 U.S. 97 (1976)). The Eighth Amendment obligates prison officials to provide necessary medical care to prisoners. Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994). To state a cognizable claim against prison officials for deliberate indifference to a substantial risk of serious injury, a prisoner must first show the presence of a "serious illness or injury." Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003). Second, the prisoner must show that the prison official

---

[9] Hartley does not specify in his complaint whether he was a pre-trial detainee or a convicted prisoner while incarcerated at OCJ. Defendant Devlin asserts that Hartley was a pre-trial detainee during his incarceration at OCJ. Dkt No. 20-1 at 6 n.1. If he were a pre-trial detainee, his allegations against Devlin are properly analyzed under the Due Process Clause of the Fourteenth Amendment, rather than under the Eighth Amendment. Cano v. City of New York, No. 13-CV-3341 (WFK)(VVP), 2015 WL 4865993, at *3 (E.D.N.Y. Aug. 13, 2015). However, the analysis applicable to Hartley's claim is the same standard used to analyze deliberate indifference claims brought by convicted prisoners under the Eighth Amendment. See Caiozzo v. Koreman, 581 F.3d 63, 72 (2d Cir. 2009) (finding that a claim of deliberate indifference to a serious medical need "should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment.").

demonstrated deliberate indifference by having knowledge of the risk of harm and failing to take measures to avoid the harm. <u>Farmer</u>, 511 U.S. at 834.

A serious medical condition is determined by factors such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain." <u>Brock v. Wright</u>, 315 F.3d 158, 162-63 (2d Cir. 2003) (citing <u>Chance v. Armstrong</u>, 143 F.3d 698, 702 (2d Cir. 1998)). The severity of the denial of care should also be judged within the context of the surrounding facts and circumstances of the case. <u>Smith</u>, 316 F.3d at 185.

Deliberate indifference requires the prisoner "to prove that the prison official knew of and disregarded the prisoner's serious medical needs." <u>Chance</u>, 143 F.3d at 702. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." <u>Farmer</u>, 511 U.S. at 837. Thus, prison officials must be "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." <u>Gamble</u>, 429 U.S. at 104. "[M]ere disagreement over the proper treatment does not create a constitutional claim" as long as the treatment was adequate. <u>Chance</u>, 143 F.3d at 703. Therefore, "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a Section 1983 claim." <u>Sonds v. St. Barnabas Hosp. Corr. Health Servs.</u>, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001).


**1.  Deliberate Indifference to a Serious Medical Need**

### a. Serious Medical Need

Defendants dispute whether Hartley's condition constitutes a "serious medical need." Dkt. Nos. 22-1 at 10-11; 20-1 at 8-9. The Court finds that, at this early stage in Hartley's action, he has alleged sufficient facts to show that he suffered from a serious medical need.

As explained by the Second Circuit, the inquiry into a deliberate indifference claim includes both an objective and subjective test. <u>See</u> <u>Hathaway</u>, 99 F.3d at 553. The objective test requires the Court to find "a condition of urgency that may result in degeneration or extreme pain." <u>Freeman v. Strack</u>, No. 99-CV-9878 (AJP), 2000 WL 1459782, at *5 (S.D.N.Y. Sept. 29, 2000) (quoting <u>Chance</u>, 143 F.3d at 702)) (internal quotation marks omitted).

Here, Hartley has presented his own medical records from Bassett Hospital, which note that, on September 3, 2013, he was suffering from "[s]ignificant inflammatory change adjacent to the inferior aspect of the cecum without a normal-appearing appendix. Findings likely represent appendicitis." Compl. at 20. Additionally, Hartley's discharge note indicates "concern[] for a perforated appendicitis" and noted that Hartley would be "managed non-operatively" due to the appearance of an early abscess formation, but that he would "need an interval appendectomy." <u>Id.</u> at 21. Hartley then claims, throughout much of his complaint, that he remained in extreme pain following his discharge from Bassett Hospital. <u>See</u>, <u>e.g.</u>, Compl. at 4, 6, 8. On this record, the Court finds that Hartley has alleged sufficient facts to show that he suffered from a "serious medical need" which satisfies the objective prong of the deliberate indifference analysis. <u>See</u> <u>Brock</u>, 315 F.3d at 162-63.

### b. Deliberate Indifference

### i. Vadlamudi, Zaki, and Coppola[10]

Hartley contends that Vadlamudi, Zaki, and Coppola were deliberately indifferent to his serious medical need by failing to treat his perforated appendix and failing to arrange for an appendectomy. See generally Compl. Defendants argue that Hartley has failed to show they exhibited deliberate indifference, and that Hartley's allegations amount to no more than a disagreement regarding treatment between Hartley and the medical staff at Marcy C.F. Dkt. No. 22-1 at 10-11.

Here, Hartley claims that, upon his arrival at Marcy C.F., he explained his condition during his initial medical screening, and told the examining nurse that he was "in a great deal of pain[.]" Compl. at 5. The following day, Vadlamudi examined Hartley, and told him that he would receive an appendectomy. Id. at 6. Following Vadlamudi's examination, Hartley wrote a letter to defendant Coppola, the Nurse Administrator at Marcy C.F., requesting a second opinion regarding his appendix condition. Id. After Coppola failed to respond to Hartley's letter, Hartley filed a grievance against Coppola, complaining of inadequate medical attention despite the fact that his condition caused him extreme pain. Id. Hartley further alleges that Zaki examined him on three separate occasions, ordered lab work, and conceded that the lab work showed abnormalities, but failed to arrange a follow-up appointment for Hartley. Dkt. No. 28 at 5. Hartley's allegations tend to show that the acts, or omissions, of Coppola, Vadlamudi, and Zaki exacerbated and contributed to the pain that he suffered from his appendix condition. See Chance, 143 F.3d at 703.

---

[10] Hartley also asserted deliberate indifference claims against defendants Koenigsmann and Kelly. Compl. at 8-9. Because the Court finds that Koenigsmann and Kelly were not personally involved in the alleged constitutional deprivation, the Court need not address Hartley's allegations that the defendants were deliberately indifferent to his serious medical need. See section II.B.1-2 supra.

Accordingly, it is recommended that defendants' motion on this ground be denied.

### ii. Devlin

Hartley contends that Devlin denied his request for a medical transfer order, despite being aware that Hartley's condition necessitated a follow-up visit to Bassett Hospital. Compl. at 4. Devlin states that he did not violate Hartley's constitutional rights because Hartley only preferred a different course of treatment that went against medical judgment. Dkt. No. 20-1 at 8-10.

"Non-medical personnel may engage in deliberate indifference if they intentionally deny or delay access to medical care." <u>Jean v. Barber</u>, No. 9:09-cv-430 (MAD/GHL), 2011 WL 2975218, at *5 (N.D.N.Y. July 21, 2011). Here, Hartley alleges that Devlin was aware that his condition required follow-up treatment because his treating physician at Bassett Hospital gave express written orders to Devlin to return Hartley for surgery. Dkt. No. 23 at 3. Devlin then allegedly denied the medical transfer order necessary for Hartley's return to the hospital, telling Hartley "you're not dead and you're not going to die." Compl. at 4; Dkt. No. 23 at 3. While Hartley's allegations are somewhat murky, he has alleged facts sufficient to overcome Devlin's motion to dismiss. Liberally construed, Hartley alleges that Devlin was aware of the seriousness of his appendix condition and then acted to prevent him from receiving the necessary care for that condition. See <u>Jones v. Rock</u>, No. 9:12-cv-0447 (NAM/TWD), 2013 WL 4804500, *15 (N.D.N.Y. Sept. 6, 2013) (denying motion to dismiss a deliberate indifference claim where the defendant "had an element of control over whether [the] Plaintiff" saw a doctor).

Accordingly, it is recommended that defendant Devlin's motion on this ground be

denied.

### D. First Amendment

#### 1. Retaliation

Hartley alleges that, following what he perceived to be inadequate medical treatment from Vadlamudi, he wrote a letter to defendant Coppola, to which Coppola never responded. Compl. at 6-7. Hartley then filed a grievance against Coppola on February 20, 2014. Id. at 7. In April 2014, Coppola summoned Hartley to a meeting. Id. At that meeting, Coppola said to Hartley: "[S]o you like to file grievances?. . .[I']m going to give you something to write Albany about!" and then told Hartley that she discontinued his seizure medication. Id.

Courts are to "approach [First Amendment] retaliation claims by prisoners 'with skepticism and particular care[.]'" See, e.g., Davis v. Goord, 320 F.3d 346, 352 (2d Cir. 2003) (quoting Dawes v. Walker, 239 F.3d 489, 491 (2d Cir. 2001), overruled on other grounds by Swierkiewicz v. Sorema, NA, 534 U.S. 506 (2002)). A retaliation claim under section 1983 may not be conclusory and must have some basis in specific facts that are not inherently implausible on their face. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); South Cherry St., LLC v. Hennessee Group LLC, 573 F.3d 98, 110 (2d Cir. 2009). "To prove a First Amendment retaliation claim under Section 1983, a prisoner must show that '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" Espinal v. Goord, 558 F.3d 119, 128 (2d Cir. 2009) (quoting Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004), overruled on other grounds by

Swierkiewicz v. Sorema, N.A., 534 U.S. 506 (2002)).  If the plaintiff meets this burden, the

defendants must show, by a preponderance of the evidence, that they would have taken the

adverse action against the plaintiff "even in the absence of the protected conduct."  Mount

Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977).  "Types of

circumstantial evidence that can show a causal connection between the protected conduct

and the alleged retaliation include temporal proximity, prior good discipline, finding of not

guilty at the disciplinary hearing, and statements by defendants as to their motives."  See

Barclay v. New York, 477 F. Supp. 2d 546, 558 (N.D.N.Y. 2007).  In order to prove an

adverse action, plaintiff must show that the defendant's "'retaliatory conduct . . . would deter

a similarly situated individual of ordinary firmness from exercising his or her constitutional

rights . . . . Otherwise, the retaliatory act is simply de minimis, and therefore outside the

ambit of constitutional protection.'"  Roseboro v. Gillespie, 791 F. Supp. 2d 353, 366

(S.D.N.Y. 2011) (quoting Dawes, 239 F.3d at 292-93).

     It is well-established that an inmate's properly-filed grievance is protected speech.

Mateo v. Fischer, 682 F. Supp. 2d 423, 433 (S.D.N.Y. 2010) (citing Dawes, 239 F.3d at

492).  Thus, Hartley satisfies the first prong of the test.  The second prong requires the

plaintiff to show that the defendant took some adverse action toward him.  Here, Hartley

alleges that Coppola discontinued his seizure medication.  It is plausible that the denial of

Hartley's seizure medication "would suffice to deter a similarly situated individual of ordinary

firmness from filing a constitutionally protected grievance against a prison [nurse]."  Burton

v. Lynch, 664 F. Supp. 2d 349, 367 (S.D.N.Y. 2009) (finding that the denial of medical

treatment and pain medication constitutes adverse action).

     The third prong requires Hartley to show a causal connection between his protected

speech and the adverse action. To satisfy this prong, the Court may consider various factors, including "(1) the temporal proximity between the protected activity and the alleged retaliatory act; (2) the inmate's prior good disciplinary record; (3) vindication at a hearing on the matter; and (4) statements by the defendant concerning his motivation." <u>Vega v. Artus</u>, 610 F. Supp. 2d 185, 207 (N.D.N.Y. 2009) (quoting <u>Zaire v. Doe</u>, No. 9:03-CV-629, 2006 WL 1994848, at *5 (N.D.N.Y. July 13, 2006) (Scullin, J.) (internal citations and quotation marks omitted)). Here, Hartley has presented evidence of the first and fourth factors.

Hartley filed a grievance against Coppola on February 20, 2014, and Coppola allegedly discontinued his seizure medication in April 2014. Such temporal proximity evidences a causal connection between the grievance and the discontinuance of Hartley's medication. <u>See</u> <u>Burton</u>, 664 F. Supp. 2d at 367 ("[C]ourts have found that six and eight month gaps between the protected conduct and adverse action were sufficient[.]") (citing <u>Espinal</u>, 558 F.3d at 129)). Hartley also states that Coppola told him that she would "give [him] something to write Albany about" before allegedly discontinuing his medication. Compl. at 7. Additionally, Hartley presents evidence that the inmate representatives on the Inmate Grievance Review Committee ("I.G.R.C.")[11] that reviewed his grievance found in favor of Hartley regarding Coppola's alleged retaliation. <u>Id.</u> at 29.

Defendants argue that Coppola would have taken the same action even in the absence of Hartley's protected conduct. Dkt. No. 22-1 at 14. Liberally construing Hartley's claim against Coppola, the Court finds that he has alleged sufficient facts to survive defendants' motion to dismiss. Although defendants point to a letter included as an exhibit

---

[11] The I.G.R.C. is comprised of two inmate representatives, chosen by the grievant, and two staff representatives appointed by the superintendent. 7 N.Y. COMP. CODES R. & REGS. tit. 7 § 702.4(a)(4).

to Hartley's complaint which states that medical staff confiscated an unlabelled medication after it was discovered that the medication had been discontinued by mental health staff, the letter does not foreclose the possibility that defendant Coppola neglected Hartley's medical needs in retaliation for the grievance filed against her. Contrary to defendants' assertion that Coppola only confiscated, as opposed to discontinued, the medicine, Hartley's complaint, liberally construed, alleges that Coppola was involved in the decision to discontinue the medication, and that she stated her motivation in discontinuing the medication. See Compl. at 7. As such, dismissal is not warranted at this stage in the action. However, the Court expresses no opinion as whether the retaliation claims against Coppola would survive a properly filed motion for summary judgment.

Accordingly, it is recommended that defendants' motion on this ground be denied.


## E. Qualified Immunity

### 1. Devlin

Defendant Devlin argues that he is entitled to qualified immunity because Hartley's allegation against him does not violate clearly established law. Dkt. No. 20-1 at 10.

The doctrine of qualified immunity is an affirmative defense which "shield[s] an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law." Pearson v. Callahan, 555 U.S. 223, 244 (2009). Even if a disciplinary disposition is not supported by "some evidence," prison officials are entitled to qualified immunity if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Luna v. Pico, 356 F.3d 481, 490

(2d Cir. 2004) (quoting Wilson v. Layne, 526 U.S. 603, 614 (1999)) (internal quotation marks omitted).  This assessment is made "'in light of the legal rules that were clearly established at the time [the official's action] was taken.'"  Wilson, 526 U.S. at 614 (quoting Anderson v. Creighton, 483 U.S. 635, 639 (1987) (internal quotation marks omitted); Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991).  To determine whether a state official is entitled to qualified immunity for acts taken during the course of his or her employment, a reviewing court is to determine: "'(1) whether plaintiff has shown facts making out violation of a constitutional right; (2) if so, whether that right was clearly established; and (3) even if the right was clearly established, whether it was objectively reasonable for the [official] to believe the conduct at issue was lawful.'"  Phillips v. Wright, 553 F. App'x 16, 17 (2d Cir. 2014) (quoting Gonzalez v. City of Schenectady, 728 F.3d 149, 154 (2d Cir. 2013)).

Here, the Court finds that Hartley has alleged sufficient facts to show that Devlin violated his constitutional rights.  See section II.C.1.b.ii infra.  It is well established that "[a] claim of deliberate indifference to serious medical needs in violation of the Eighth Amendment alleges the violation of a clearly established right."  Burton, 664 F. Supp. 2d 349, 368 (S.D.N.Y. 2009) (citing Lloyd v. Lee, 570 F. Supp. 2d 556, 570 (S.D.N.Y. 2008)).  A defendant may be found to be shielded by qualified immunity on a motion to dismiss only where "'the complaint fails to allege the violation of a clearly established right.'"  Id. (quoting Williams v. Fischer, No. 02 Civ. 4558(LMM), 2003 WL 22170610, at *11 (S.D.N.Y. Sept. 18, 2003)) (citation omitted).  Therefore, the Court finds that Devlin is not entitled to qualified immunity at this stage in the proceedings.

Accordingly, it is recommended that defendant Devlin's motion on this ground be denied.

## III. Conclusion

For the reasons stated above, it is hereby:

**RECOMMENDED** that defendants Koenigsmann, Kelly, Coppola, Vadlamudi and Zaki's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) be:

    1.    **GRANTED** as to the Eighth Amendment deliberate indifference claims against Koenigsmann and Kelly.

    2.    **DENIED** as to (1) the Eighth Amendment deliberate indifference claims against Coppola, Vadlamudi, and Zaki; and (2) the First Amendment retaliation claim against Coppola; and it is further

**RECOMMENDED** that defendant Devlin's motion to dismiss pursuant to Fed. R. Civ. P. 12(b) and 12(c) be **DENIED** in all respects; and it is further

**RECOMMENDED** that defendants Koenigsmann and Kelly be dismissed from this action; and it is further

**ORDERED** that the Clerk's Office make necessary changes to the Docket to reflect the actual name of defendant Coppola; and it is further

**ORDERED** that the Clerk serve a copy of this Report-Recommendation and Order on the parties in accordance with Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  <u>Roldan v. Racette</u>, 984 F.2d 85, 89 (2d Cir. 1993); <u>Small v. Sec'y of HHS</u>, 892 F.2d 15 (2d Cir. 1989); <u>see</u> <u>also</u> 28 U.S.C. § 636(b)(1); Fᴇᴅ. R. Cɪᴠ. P. 72, 6(a),

6(e).

DATED:      January 19, 2016
              Albany, New York

Christian F. Hummel
U.S. Magistrate Judge